OPINION OF THE COURT
Arthur F. Engoron, J.
Capitalism is in chaos. Six months ago investment bank Bear Stearns collapsed. One month ago giant home mortgage lenders Fannie Mae and Freddie Mac were placed under federal conservatorship. In the last several weeks, probably the most tumultuous time in Wall Street’s history, the venerable Lehman Brothers investment bank declared bankruptcy (the largest bankruptcy by far in American history); the federal government took over 80% of insurance behemoth American International Group; Merrill Lynch agreed to be bought by a large bank; the government approved emergency measures to help stabilize Goldman Sachs and Morgan Stanley; federal regulators took over Washington Mutual (the largest bank failure by far in American history); and Wachovia Bank, the nation’s fourth largest, is looking to sell its banking business. The financial landscape is littered with the fallen and the mortally wounded.
So what has all of this to do with the instant summary holdover proceeding? This court sees two connections. One is that the economy of New York City, so dependent on the fabulous salaries and famous bonuses paid to the wheelers and dealers of what, at least until recently, has been the financial capital of the world, will be facing hard times. Courts, no less than other public institutions, should foster efficiency in the local business community. When real estate, which is at the core of the current crisis, is unused or underutilized, the drag on capital formation is palpable. Furthermore, although Adam Smith’s “unseen hand” and the “miracle of the market” theories of capitalism have recently taken a bad beating, as a matter of elemental fairness businesses should be allowed the benefit of their bargains and held to the performance of their obligations. A deal is a deal.
Two is that while the reasons for the recent meltdown will be analyzed for generations, one salient feature is the exaltation of form over substance, and a lack of simple common sense. If a home mortgage had a high interest rate, it was worth purchasing, never mind that the principal amount was greater than the value of the property and that the mortgagor was about to *562 default. The more “sub-prime” mortgages that were purchased, the better the balance sheet looked; and if the masters of the universe were doing it, why, we can’t all fail, can we? How irrational can the exuberance be? The fundamentals were forgotten, and the focus was on short term gain.
Similarly, in this court’s humble opinion, an exaltation of form over substance and a lack of plain common sense permeate the procedural aspects of many summary proceedings. I believe the time has come to reexamine the shibboleth that as such proceedings are creatures of statute, every error is fatal, every mistake is substantial, and every hoop must be jumped through perfectly. The right to retain property is no more sacred than the right to reclaim it. This court will not require perfection, will not ignore plain meaning, will not kowtow to legal legerdemain, and will not be complicit in unnecessarily delaying the resolution, on their merits, of summary proceedings. In landlord-tenant matters, no less than in any other, common sense should prevail over inanity; substance should trump form; and the intent of the parties, not the sometimes imperfect expression thereof, should govern their relations.
All this is not to suggest that adherence to statutes and settled law is optional. And judicial discretion has its limits, witness the immutability of the statute of limitations (see CPLR 201). Nevertheless, judges need not be automatons. Along with the solemn obligation to “follow the law,” we are invested with the latitude to interpret and apply it to a dynamic society populated by fallible parties represented by harried attorneys. Let justice, not formality, be our lodestar. The statute of limitations cannot be extended, but for good cause shown it can be tolled!
At oral argument of the instant motion respondent’s learned counsel, vigorously representing his client, kept repeating that the subject lease did not use “the magic words,” to wit, “shall expire.” However, when this court interprets leases (and other contracts) the only “magic words” are “intent,” “spirit,” and “substance.” Judge Cardozo eloquently and inimitably expressed this in Wood v Duff-Gordon (222 NY 88, 91 [1917]): “The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day.”
For example, if I give you a thousand dollars and say, “Here’s a thousand dollars, it’s a gift,” it is a gift, and by definition it does not have to be repaid. If I give you a thousand dollars and say, “Here’s a thousand dollars, it’s a loan,” it is a loan, and by *563 law it is payable on demand. However, if I give you a thousand dollars and say, “Here’s a gift of a thousand dollars; you must repay it on demand,” the operative word is not “gift,” it is “repay,” because my intent is to make a loan. Conversely, if I give you a thousand dollars and say, “Here’s a loan of a thousand dollars; you can keep it,” the operative word is not “loan,” it is “keep,” because my intent is to make a gift. Almost a century after Judge Cardozo’s famous utterance, let its liberality be our guiding light.
Background
Petitioner commenced the instant summary proceeding to regain possession of certain property in midtown Manhattan that petitioner’s predecessor in interest leased to respondent. Respondent now moves to dismiss on the ground of lack of subject matter jurisdiction and failure to state a cause of action. Respondent contends (moving mem at 2), and this court agrees, that “the only materials needed [to decide] this motion are the lease, the notice of termination, and the petition.”
The subject lease (moving exhibit B), article 21 (I), “Termination or Relocation,” provides (at 35), as here relevant, as follows: “Landlord reserves the right to terminate this lease [if the landlord needs the premises to restructure the building] provided: (a) Landlord shall give Tenant at least one hundred twenty (120) days’ prior notice thereof, and (b) Landlord shall pay [certain moving-out and moving-in expenses].”
Petitioner served a “One Hundred and Twenty (120) Day Notice of Termination” (see moving exhibit A) claiming, essentially, that petitioner needed the premises to restructure the building, and that petitioner was, accordingly, invoking its right to terminate the tenancy in 120 days. After expiration of the 120 days, petitioner served the instant notice of petition and petition (moving exhibit A), the latter of which (if 6) states that “[t]he Lease was terminated ... for the reasons set forth in the Notice of Termination [annexed thereto].”
In support of the instant motion, respondent does not claim that petitioner does not need the subject premises to restructure the building; does not claim that petitioner failed to serve the predicate notice; does not claim that petitioner did not wait 120 days thereafter to commence the instant proceeding; and does not claim that petitioner failed to pay respondent any monies owed pursuant to article 21 (I) or any other provision. Rather, respondent argues (1) that article 21 (I) creates a condition subsequent rather than a conditional limitation, thus divesting *564 the Civil Court of subject matter jurisdiction; and (2) that the petition fails to state a cause of action because it fails to allege that petitioner satisfied the payment condition of article 21 (I) (supra).
Discussion
Conditional Limitations and Conditions Subsequent
The key practical difference between a “conditional limitation” and a “condition subsequent” is that for a breach of the former, a landlord may bring an KPAPL article 7 summary holdover proceeding in Civil Court, whereas for a breach of the latter the landlord is relegated to bringing a common-law ejectment action in Supreme Court (which is decidedly not summary). This court discussed the theoretical distinctions between “limitations” and “conditions” in 451 Rescue LLC v Rodriguez (15 Misc 3d 1140[A], 2007 NY Slip Op 51062[U] [Civ Ct, NY County 2007]). There, this court found that the lease had created a condition subsequent and ruled in favor of the respondent tenant, dismissing the proceeding for lack of subject matter jurisdiction.
Simply put, if a lease allows a landlord to serve a notice to cure based on an alleged violation thereof, the lease has created a conditional limitation; if a lease allows a landlord to serve a notice of termination based on an alleged violation thereof, the lease has created a condition subsequent. But here, the petitioner has not alleged a breach by respondent. Rather, petitioner has alleged that the building is going to be restructured; that the lease allows petitioner the option of terminating the lease in such situations; and that petitioner has elected to do so. A “cure” period, or a lack of one, is completely irrelevant; and respondent can defend on the ground that the situation has not arisen, that the lease does not provide an option to terminate in such situations, or that petitioner did not elect to do so.
Respondent argues vociferously (moving mem at 12) that article 21 (I) does not constitute a conditional limitation because the first sentence only provides for a “right” to terminate, rather than for an “automatic” termination:
“Here . . . the lease does not provide that it expires automatically after conclusion of the 120 days’ notice period. Instead, the lease clause merely gives the landlord an option to terminate [in case of a restructuring] and sets forth [the notice and payment *565 conditions]. But even if the conditions are satisfied, nothing in the lease provides that the term automatically terminates. Thus, the termination provision is a condition subsequent, not a conditional limitation.”
This court completely disagrees. The plain meaning of article 21 (I) is that if there is to be a restructuring, and if the landlord gives notice, at the end of the notice period the lease terminates (albeit the landlord may have to pay the tenant moving-out and moving-in expenses). First of all, this is just plain common sense. The landlord has “the right to terminate this lease,” and the right to send a “Notice of Termination.” Clearly, if the right exists and the notice is sent, the lease terminates. Why would this only create a “right to terminate?” Second, this is not a situation in which the preconditions to termination were objective and external (say, “the temperature goes above 100, and the Dow goes below 10,000”); rather, they were subjective and depended upon affirmative action by the landlord (a restructuring and a notice). Thus, the landlord’s intention to terminate would be clear. Finally, if a “Notice of Termination” only provided a “right to terminate,” one would expect that a detailed lease of some 83 pages would set forth how the landlord could then exercise this supposed “right to terminate.” Not surprisingly, the mechanics of this secondary notice are not spelled out. In sum, the only sensible reading of article 21 (I) is that the happening of the contingencies would result in the termination of the lease, not the right to terminate the lease. In addition to the plain meaning of the words used, and the obvious intention of the parties, that the subject language creates a conditional limitation is buttressed, if not proven, by such cases as Miller v Levi (44 NY 489, 495 [1871]), Burnee Corp. v Uneeda Pure Orange Drink Co., Inc. (132 Mise 435, 439-443 [App Term, 1st Dept 1928]), and South St. Seaport Ltd. Partnership v Jade Sea Rest. (151 Misc 2d 725, 727 [Civ Ct, NY County 1991] [finding condition subsequent, as forfeiture resulted from the tenant’s breach; expiration did not depend upon objective contingency or (as here) “contingency . . . set in motion by the landlord”]).
Respondent also argues (moving mem at 13) that article 21 (I) allows for a lease “forfeiture,” a result that the law disfavors, and the terms creating which must be strictly construed. In this court’s view, a forfeiture occurs when the tenant does (or fails to do) something that the landlord claims results in a termina *566 tian. Fairness to the tenant requires a strict construction, so that an “innocent mistake” does not result in the loss of a valuable leasehold. Here, the tenant agreed to a limitation of the term of the lease if certain circumstances occurred, not if the tenant did something wrong, and the tenant can contest the case on the merits. Furthermore, the law presumes that at the time the tenant entered into the lease, it fully understood this provision, which may have been reflected in the rental amount or other terms of the lease. The subject provision does not provide for a forfeiture and should not be looked at askance.
Stating a Cause of Action
Respondent also argues that the petition fails to state a cause of action because, although it alleges satisfaction of the 120-day notice condition, it fails to allege satisfaction, waiver, or excuse of the payment condition. This argument is unavailing for several reasons.
First, CPLR 3015 (a), entitled “Conditions precedent,” provides, in part, as follows: “The performance or occurrence of a condition precedent in a contract need not be pleaded. A denial of performance or occurrence shall be made specifically and with particularity.” In our adversarial system of adjudication, the general rule is that each party need only allege its own contentions, as long as they make out a cause of action or a defense. The instant “limitation” (allowing an early termination) is solely for the landlord’s benefit; the instant “condition” (of payment) is solely for the tenant’s benefit. Thus, pleading satisfaction of the payment condition was not required.
Second, pleading that the condition had been satisfied would have been premature. Respondent’s recitation of that “condition” (notice the singular) (moving mem at 6) is as follows: “(b) landlord ‘shall’ pay the . . . reasonable expenses of tenant in moving [out] and [moving in].”
Thus, the condition is unitary; it contemplates a single payment, especially as recitation of the moving-out expenses is placed prior to recitation of the moving-in expenses. Obviously (and respondent concedes this), no monies for moving-out expenses can be calculated, and thus paid, prior to respondent moving out, which it has not yet done. Thus, on its face, the condition could not have been satisfied at the time petitioner commenced this proceeding, and petitioner could not and need not have pleaded that it was satisfied. (See generally Matter of Coatsworth, 160 NY 114 [1899]; Plaza Operating Partners v *567 Maison Mendessolle, 144 Mise 2d 696 [Civ Ct, NY County 1989].)
Third, even if alleging satisfaction of the payment condition was, strictly speaking, required, and not premature, this court would excuse the omission pursuant to CPLR 2001: “At any stage of an action, . . . the court may permit. . . [an] omission . . . to be corrected . . . or, if a substantial right of a party is not prejudiced, the . . . omission . . . shall be disregarded.” There is no legally-cognizable prejudice to respondent here, who could have written a letter rejecting the 120-day notice, and who could have, if the facts warranted it (which they admittedly do not) asserted lack of payment as (1) an affirmative defense (pursuant to CPLR 3018 [b]); (2) the basis for a motion to dismiss (pursuant to CPLR 3211 [a] [1]), with the documentary evidence being the lease, and the theory being that the lease required a payment that petitioner failed to make; or (3) the basis for a motion for summary judgment (pursuant to CPLR 3212).
Finally, even if a payment allegation was required, and it would not have been premature, and its absence could not be excused, this court would find that the allegation was made, albeit implicitly. Given a commonsense reading, the petition implies that all conditions to termination were satisfied. If a lease says that the landlord can evict the tenant if (1) something happens, (2) the landlord gives notice, and (3) the landlord pays the tenant what is owed; and if the landlord commences a summary holdover proceeding alleging that (1) the something has happened and (2) the landlord has given notice, the clear implication is that (3) the landlord has paid or nothing is owed. If there is any ambiguity, a court should construe a pleading the way it construes a contract, i.e., that all the terms have meaning, rather than as being an exercise in futility.
Thus the petition states a cause of action.
Conclusion
For the reasons set forth herein, the instant motion is denied.